IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LISA MCCLENDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:11-CV-1018-WKW |
| | ) | [WO] |
| LIBERTY NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss Count One of Plaintiff's Second Amended Complaint.  (Doc. # 45.)  The parties have fully briefed the motion.  (Docs. # 49, 51.)  After careful consideration of the arguments of counsel, the appropriate law, and the allegations set forth in the operative complaint, the court finds that the motion is due to be granted.

## I.  JURISDICTION AND VENUE

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When

evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F. 3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

Under Rule 12(b)(6), "it is generally true that the 'scope of the review must be limited to the four corners of the complaint.'" *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).   In addition to considering the properly pleaded allegations of the complaint, however, the court can consider "an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Id*.; *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (providing that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

## III. BACKGROUND

**A.    Facts**

Because the court must accept the allegations of the complaint as true at this stage of the litigation, the following facts may not be the "actual facts." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

Plaintiff Lisa McClendon was a "contract agent" with Defendant for ten years, and her contract with Defendant was in writing.   As of March 5, 2011, Plaintiff was deemed medically disabled and restricted in what duties she could perform as a field agent for Defendant.   Plaintiff was medically released to return to work with no restrictions in April 2012.

During her employment, Plaintiff established numerous franchise accounts for which she had exclusive rights to renewal commissions.  Plaintiff alleges that she has not been paid these renewal commissions, and that Defendant wrongfully terminated her employment on September 2, 2011.  According to the second amended complaint, Defendant violated provisions in both its <u>Guide to Growth</u> and its <u>Field Procedures Manual</u> relating to termination.  Plaintiff alleges that she has earned salary, renewal commissions, accumulated unused vacation pay, and a bond account which has not been paid to her and was due and payable on the date of her termination.

**B.**    **<u>Procedural History</u>**

This case, originally filed in state court, was removed from the Tallapoosa County Circuit Court on December 1, 2011.  In the beginning, Plaintiff brought claims against Defendant Liberty National Life Insurance Company, Sam Nazim, and fictitious defendants.  (Doc. # 1.)  After the action's timely removal to this court, Plaintiff filed a motion to remand.  (Doc. # 4.)  The court denied the motion to remand.  (Doc. # 16.)   On June 27, 2012, Plaintiff filed an Amended Complaint, adding Torchmark Corporation and Patti Herring as additional defendants.  (Doc. # 17.)  In October 2012, Defendants Torchmark Corporation, Patti Herring, and Sam Nizam were dismissed from the action.  (Docs. # 31, 33, 35.)

On April 1, 2013, Plaintiff filed a Second Amended Complaint. (Doc. # 42.) In her second amended complaint, which is the operative complaint, Liberty National is the sole defendant. Plaintiff asserts the following two claims: (1) Count One, a wrongful discharge claim; and (2) Count Two, a breach of contract claim. Defendant now moves to dismiss Count One for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## IV.  DISCUSSION

The court will discuss subject matter jurisdiction in Part A. In Part B, the court will analyze Plaintiff's new assertion that Count One is a federal-law claim, and not a state-law claim. In Part C, Count One will be analyzed under Rule 12(b)(6) as a state-law claim.

**A.**   **The court maintains subject matter jurisdiction pursuant to 28 U.S.C. § 1332.**

Plaintiff has challenged subject matter jurisdiction since the removal of this action, and that matter has been resolved against her. To the extent that Plaintiff again is attempting to defeat diversity jurisdiction, that attempt must fail. This is because subsequent litigation events "do not oust the district court's jurisdiction once it has attached." *Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

Plaintiff is a citizen of Alabama, and Defendant is not. (*See* Doc. # 16 (order denying motion to remand)); (Doc. # 37 at 2, n.1 (order noting that "Liberty

National has presented ample evidence of its citizenship outside Alabama").) Thus, the parties are of diverse citizenship.  The remaining element of diversity jurisdiction is the amount-in-controversy requirement of § 1332.  In the operative complaint, Plaintiff caps her damages on her wrongful termination claim (Count One) asking for "compensatory and punitive damages in an amount not to exceed $74,500.00."  (Doc. # 42 at 3.)  She does the same with her breach-of-contract claim (Count Two), again asking for only "compensatory damages in an amount not to exceed $74,500.00."  *Id.*  Where a plaintiff alleges separate *ad damnum* amounts with respect to multiple counts, the amount claimed in each count is properly added together to determine the amount in controversy.  *See Snyder v. Harris*, 394 U.S. 332, 335 (1969).  Because Plaintiff requests damages not to exceed $74,500.00 for each claim, the aggregate damages exceed $75,000.00, thus satisfying the amount-in-controversy requirement.[1]  The court has not been deprived of subject matter jurisdiction here.

**B.**   **Plaintiff cannot support her wrongful discharge claim based on FMLA since she did not plead an FMLA claim in the operative complaint.**

---

[1] In any event, even if Plaintiff had limited her recovery to less than $75,000 in her post-removal amendment to the complaint, the relevant time frame for measuring the amount-in-controversy is at the time of removal.  *See Poore v. Am.-Amicable Life Ins. Co. of Tex.*, 218 F. 3d 1287, 1291 (11th Cir. 2000) ("[E]vents occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction."), *overruled in part on other grounds by Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007).

In Count One, Plaintiff asserts a claim for "wrongful discharge." She does not cite or rely on any federal statutory cause of action for wrongful discharge, and Plaintiff previously has represented that Count One is a state-law claim. (Doc. # 33 ¶ 2.) However, in her response to the pending motion to dismiss (Doc. # 49), Plaintiff asserts that her claim does not arise under Alabama law but instead under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Defendant argues that Plaintiff cannot transform her state-law claim into an FMLA claim because her complaint does not plead such a claim. (Doc. # 51.) Defendant has the better argument.

This is not the first time Plaintiff has tried to amend her complaint to add an FMLA wrongful termination claim. (*See* Doc. # 33 ¶ 2.) The court concluded last fall that Plaintiff failed "to plead a cognizable FMLA claim" because although she "mention[ed] the phrase and statute," her proposed complaint satisfied "neither the standard articulated by Federal Rule of Civil Procedure 8 nor the Supreme Court's contemporary interpretation of that standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." (Doc. # 37.) However, the court granted Plaintiff leave to amend her complaint to satisfy the requisite standards but warned Plaintiff that she "should ensure that [any such] proposed amended complaint . . . does not suffer from the same deficiencies as her latest." (Doc. # 37.) That amendment (the Second Amended Complaint) still fails

to assert an FMLA claim of wrongful termination.  The operative complaint is even less specific than Plaintiff's last, making no mention of FMLA at all.[2] Responding to the court's requirement of more specificity with the filing of an even more vague pleading does not satisfy *Iqbal* and *Twombly* any more than the prior proposed complaint did.   Defendant argues, and the court agrees, that Plaintiff cannot now assert an FMLA claim through a back door method of altering her theory in her response.  *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (noting that because the plaintiff raised a claim for the first time in his response to a motion to dismiss, instead of seeking leave to file an amended complaint, the court would not consider it); c*f. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (stating that a complaint may not be amended by a brief in opposition to a motion for summary judgment). Accordingly, Count One is considered a state-law claim of wrongful discharge.

**C.**   **Plaintiff's wrongful discharge claim fails under Alabama law because she was an at-will employee.**

Defendant argues that Plaintiff's wrongful discharge claim fails as a matter of law based on her at-will status.  Plaintiff responds that under Alabama law, provisions of an employee handbook can become a unilateral contract and alter the at-will status of an employment relationship.

---

[2] In Plaintiff's previous attempt to amend the complaint, she made three claims: (1) wrongful discharge, (2) breach of contract; and (3) violation of FMLA.  (Doc. # 33 ¶ 2.)  In the Second Amended Complaint, Plaintiff submits the same complaint, but drops the third claim altogether, abandoning the FMLA claim.

The law is well settled in Alabama that "employment is at will and is terminable by either party with or without cause." *Harper v. Winston Cnty.*, 892 So. 2d 346, 351 (Ala. 2004); *Hinrichs v. Tranquilaire Hosp.*, 352 So. 2d 1130, 1131 (Ala. 1977). "[A]n employer can discharge an at-will employee for a bad reason or no reason, and the employee has no right to recover damages for wrongful discharge." *Tyson Foods, Inc. v. McCollum*, 881 So. 2d 976, 983 n.14 (Ala. 2003). Under Alabama law, a plaintiff must establish the following three elements to show that "an employment contract is one other than one terminable at-will," *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 733–34 (Ala. 1987):

> (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration, *Bates v. Jim Walter Res., Inc.*, 418 So. 2d 903, 905 (Ala. 1982); (2) that the hiring agent had authority to bind the principal to a permanent employment contract, *Alabama Mills, Inc. v. Smith*, 186 So. 699, 703 (Ala. 1939); and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered, *United Sec. Life Ins. Co. v. Gregory*, 201 So. 2d 853, 854 (Ala. 1967).

*Id.* Alabama courts have "repeatedly refused to modify this doctrine even so much as to recognize a so-called public policy exception to its application." *Id.* (citing *Jones v. Ethridge*, 497 So. 2d 1107, 1108 (Ala. 1986) (refusing to recognize an exception where an employee had been dismissed for refusing to commit a criminal act); *Williams v. Killough*, 474 So. 2d 680, 682 (Ala. 1985) (same); *see also Meeks v. Opp Cotton Mills, Inc.*, 459 So. 2d 814, 814 (Ala. 1984) (finding no exception where an employee had been dismissed because he filed a workers

compensation claim); *Bender Ship Repair, Inc. v. Stevens*, 379 So. 2d 594, 595 (Ala. 1980) (finding no exception where an employee had been dismissed because he responded to a subpoena for jury duty).[3]

While Alabama law provides that employee handbooks can modify an employee's at-will status and create a unilateral contract, "[a] host of cases from Alabama state and federal courts have held that employers are entitled to prevail as a matter of law" regarding claims "founded upon employee handbooks that expressly disclaim an intention to make a contract or reserve to the employer the right to change policies unilaterally." *Butler v. Cleburne Cnty. Comm'n*, No. 1:10-cv-2561, 2012 WL 2357740, at *20 (N.D. Ala. Jan. 17, 2012); *see also Jackson v. Cintas Corp.*, 391 F. Supp. 2d 1075, 1102 (M.D. Ala. 2005); *Hanson v. New Tech, Inc.*, 594 So. 2d 96, 98–99 (Ala. 1992).  In *Hoffman-La Roche, Inc.*, the Alabama Supreme Court saw "no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so."  512 So. 2d at 733–34.  The court went on to explain however, that "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook."  *Id.* at 734.

---

[3] As recognized in *Hoffman*, both *Meeks* and *Bender Ship Repair* have been abrogated by the legislature's adoption of statutory rules to the contrary.  *See* 512 So. 2d at 728 (citing Ala. Code §§ 12-16-8.1 and 25-5-11.1, which overruled *Bender Ship Repair* and *Meeks*, respectively.)

The parties rely on several documents to argue for and against Plaintiff's at-will employment status. Those documents include the 2001 employment contract (Doc. # 49-4), the 2007 employment contract (Doc. # 23-2), pages 3–4 of the Guide to Growth (Doc. # 49-3), the introductory page and table of contents from the Field Procedures Manual (Doc. # 40-1, Ex. A), and the cover page, forward page, and table of contents from the Guide to Growth (Doc. # 40-1, Ex. B).[4]

Plaintiff argues that the 2007 employment contract is invalid and that the 2001 employment contract is the operative contract. Even if it is assumed that the 2007 employment contract is invalid, the 2001 contract provides in section 6, "Your employment may be terminated by you or the Company at any time." (Doc. # 49-4.) Based on its explicit provisions, the 2001 employment contract does not save Plaintiff's claim of wrongful discharge; she was an at-will employee.

The question that remains is what effect certain provisions set out in the employee handbooks, namely Liberty National's Guide to Growth and its Field Procedures Manual, had upon Defendant's right to terminate the employment relationship at-will. The Field Procedures Manual, on the introductory page, contains the following language, which is underlined and in all caps:

---

[4] The court may consider these documents without converting the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment because they satisfy *Speaker*'s requirements. *See Speaker*, 623 F.3d at 1379. Namely, the complaint refers to the extrinsic documents; the documents are central to Plaintiff's claims; and Plaintiff does not contest the documents' authenticity. *See id.*; *see also Harris*, 182 F.3d at 802 n.2. Additionally, Plaintiff did not object when Defendant filed and relied upon these documents.

> "THE PROVISIONS OF THIS MANUAL DO NOT CONSTITUTE
> A CONTRACT OF EMPLOYMENT AND ARE SUBJECT TO
> CHANGE OR MODIFICATION WITHOUT PRIOR NOTICE."

(Doc. # 40-1, Ex. A.)  This provision may be reasonably construed, especially in the absence of argument to the contrary, to serve as a blanket disclaimer that nothing in the manual is intended to create an employment contract altering the employee's at-will status.  This express disclaimer mirrors the one discussed in *Hoffman-La Roche, Inc.*, 512 So. 2d at 734, where the court provided that, if an employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, the employer must expressly state so. *Id.* (citing *McCluskey v. Unicare Health Fac., Inc.*, 484 So. 2d 398, 400 (Ala. 1986)). Thus, Plaintiff cannot rely upon the Field Procedures Manual to support her contention that it altered her at-will status.

In the Guide to Growth (Doc. # 40-1, Ex. B), the Foreword provides similar language, also underlined and in all caps, expressing Defendant's intentions, stating,

> "NOTICE: THE PROVISIONS OF THIS BOOKLET DO NOT
> CONSTITUTE A CONTRACT OF EMPLOYMENT AND ARE
> SUBJECT TO CHANGE OR MODIFICATION WITHOUT PRIOR
> NOTICE TO EMPLOYEES OR CONTRACTORS."

(Doc. # 40-1, Ex. B.)  Again, this provision may be construed to expressly disclaim any intention to alter Plaintiff's at-will status by providing a blanket notice at the beginning of the manual.  Plaintiff does not provide any support or argument to

dispute or invalidate the provisions of each manual.  As a matter of law, Plaintiff cannot premise her wrongful discharge claim on the terms of contracts and policy manuals that disclaim modification of an at-will employment relationship between Plaintiff and Defendant.

This is not to say that other breach-of-contract claims are foreclosed.  The issue of termination at-will is about termination and nothing more; the at-will rule does not take precedence over other substantive contract provisions between the parties (salary, commissions, vacation, and other employment terms).  "[S]imply because the contract is of indefinite duration," it would be a misapplication of "the at-will rule of construction as a rule of substantive limitation on contract formation."  *Hoffman-La Roche, Inc.*, 512 So. 2d at 734–35 (citing *Pine River State Bank v. Mettille*, 333 N.W. 2d 622, 628 (Minn. 1983) (citations omitted)).  The at-will nature of the terms of employment may not be construed as a limit on the parties' freedom to contract for other terms of employment.  A review of the damages claimed in Count Two of the Second Amended Complaint confirms that Count Two addresses other substantive terms of employment between the parties.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's Motion to Dismiss Count One (Doc. # 45), is GRANTED.  Plaintiff's wrongful discharge claim in

Count One is DISMISSED.   This case proceeds on Count Two, Breach of Contract.

DONE this 4th day of November, 2013.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE